Thank you. Chief Judge Gregory, may it please the court. My name is Scott Ballinger. I'm the director of the Appellate Litigation Clinic at the University of Virginia School of Law, and it's my pleasure to introduce Sophia Evans, who will be presenting the opening argument for Mr. Elijah, and Hall Chason, who will be handling the rebuttal. Thank you. Allison. Thank you, Your Honors, and may it please the court. Appellant asks this court to do three things today. First, to reach the merits of Mr. Elijah's claim as opposed to simply remanding it. Second, to hold that Mr. Elijah is entitled to additional good conduct time credits pursuant to the First Step Act in connection with his original 108-month term of imprisonment. And third, to use its power to reopen Elijah's 2255 motion to find that he was sentenced in excess of his statutory maximum. On this first point, Elijah appreciates the warden's concession that, at a minimum, remand is necessary to remedy the district court's error in failing to address his First Step Act claim on the merits. But remanding this case instead of addressing it on the merits would only serve to delay this court's consideration of this issue. More likely than not, Elijah will not prevail on this claim in the district court, as district Furthermore, remand would potentially have the effect of mooting Mr. Elijah's claim altogether. In addition, Elijah's request to have this court reopen his 2255 proceedings in order to address his second claim can only be considered by Your Honors, and the delay associated with remand here could potentially make it impossible for Mr. Elijah to receive full relief. Turning to the First Step Act claim, Elijah asks for nothing more than is due to him by Congress's own directive. To briefly review, the First Step Act, in part, amended the way good conduct time credits was calculated so that inmates could receive from 47 days per year to 54 days per year. All parties agree that Mr. Elijah is entitled to these additional credits vis-a-vis his revocation term, but the warden has failed to explain why Elijah should receive the additional good conduct time credits in connection with his revocation sentence, but not his underlying offense. The unitary sentencing framework established by the Supreme Court in Johnson and expounded upon by this Court in Venable and Ketter all but dictate the outcome here. Precedent tells us that the original and revocation terms of imprisonment have to be treated as components of the same sentence. And Section 3624b1 states that a prisoner who is serving a term of imprisonment of more than one year may receive credit towards the service of the prisoner's sentence of up to 54 days per year of the prisoner's sentence imposed by the Court. Combining these two pieces, it becomes clear that it doesn't matter that Elijah's term of imprisonment for his underlying offense has been completed. What's relevant is that his sentence is still ongoing. Indeed, Elijah is a prisoner who is serving a term of imprisonment of more than one year. He is serving the 144-month aggregated term of confinement in the eyes of the BOP. Thus, he is statutorily eligible to receive credit towards the service of his sentence, not only for his revocation term of his sentence, but for the original term as well, since the two together form one unified sentence. Counsel, you really think Congress intended to afford your client relief in that supervision revocation? Think about it this way. Why would Congress allow prisoners to bank credits and then they get released and then they go out and commit another crime? And they say, oh, by the way, I got some credit. I'm entitled to this. Your Honor, we recognize that this would allow some inmates to bank time credits, but only a very small amount of time credits could be banked, not to the extent that we believe it could really affect a defendant's motive to recidivize. In this case, we think that here, Mr. Elijah would only be benefiting from the additional good conduct time credits. It would not affect his motive to recidivate or anything of that sort. Furthermore, the- Let's take a look at the recidivism. The question that the judge brought up, why in the world would Congress do that, allow someone to bank time? In other words, you haven't even committed something. We're going to not send you to jail as long because of something that the previous time you got some good credit. Your Honor, the very purpose of the First Step Act was to make the Fair Sentencing Act retroactive. And thus, Congress didn't need to apply this. It did make this retroactive by passing this. The entire purpose of the First Step Act was to amend the way that good conduct time credit was calculated. And in doing that, they've said that it applied to those previous offenses. Any court in the nation supports the way in which you argue in this case? I'm sorry, Your Honor? Any court? Is there any case out there that follows this line of reasoning that you're offering us today? Yes, Your Honor. We think that Venable follows this line of reasoning. As the court in Venable said that because a revocation sentence is part of the penalty for a defendant's initial offense, he's still serving a sentence for a covered offense for purposes of the First Step Act. And in that case, you had to treat the defendant as if he were still serving the original custodial sentence. Was Venable a good time credit case? No, Your Honor. It was different insofar as it was not a good conduct time credit case, but it was cited in connection with the First Step Act. And we think that the basic purpose of the First Step Act to make retroactive Congress' amendments in the Fair Sentencing Act is still what's at issue here. So you're saying that basically no court has ever held it with regard to good time credits, the argument you're making today? That's correct, Your Honor. But we believe that the courts that have come out the other way are merely citing policy, not really statutory interpretation, and have failed to provide an explanation as to why it should deviate from the unitary sentencing theory in deciding that issue. There's no good reason to treat revocation sentences differently from the original underlying offenses here in the context of good time credit. Thus, as a result, Elijah should be entitled to an additional 63 days of good conduct time credit, which is the 108 months, which is 9 years, times 7 days, for 63 days in total. Turning to Elijah's other claim, that he was sentenced in excess of his statutory maximum when he was sentenced to 36 months for the violation of his terms of supervised release, Elijah asked this court to use its power to reopen his 2255 motion to address this issue. Recognizing that this is an extraordinary remedy, appellant argues that this is an extraordinary set of facts. Here, it was Elijah's contention that although he raised his statutory maximum claim originally, it was overlooked by the court and therefore went unaddressed. Though Elijah did raise this claim sufficiently to preserve it under the liberal pro se standard, it was admittedly obscured by his additional Haman claim, which outlined an issue that has subsequently been resolved by this court and thus is not argued here. When Elijah was sentenced in 2007 in connection with his drug offense, the law at the time defined his offense as a Class B felony. But in 2010, the Fair Sentencing Act lowered the status of this offense to a Class C felony. Thus, in 2015, when he was sentenced to his not a Class B felony, but rather a Class C felony. Section 3583E3, which outlines the relevant sentencing provisions, asserts that the maximum revocation sentence for a Class B felony is 36 months, but only 24 months for a Class C felony. Thus, in failing to prospectively give effect to the revisions made by Congress in the Fair Sentencing Act, the judge, in issuing Elijah's revocation sentence, failed to apply the law in effect at the time of his sentencing date, which constitutes a miscarriage of justice. Elijah agrees that the Fair Sentencing Act was not retroactive upon its passage. Indeed, the very reason Congress passed the First Step Act was to explicitly make the Fair Sentencing Act retroactive. Thus, Elijah agrees that he would not have been able to use the non-retroactive Fair Sentencing Act in 2015 to seek a reduction in his original sentence. What he's asking for is different here. He was entitled to have the current law applied at the time of his revocation sentence. A clear reading of the statute shows that the language is keyed to the present tense. It states that a prisoner who is a Class B felon or a Class C felon, and that's what Mr. Elijah is at the time of his sentencing event. You rely, or at least cite, Haman as some authority to give you relief, but your client's been here before, and there was a finding by the District Court and affirmed by the Court of Appeals that he's procedurally defaulted. What do you do with that? You're correct, Your Honor, insofar as his original Haman claim has been decided under Coston in the meantime. What we're citing Haman for here is the proposition that the revocation term and the original term of imprisonment are two parts of the same sentence here. And thus, the original reason for why our client was citing Haman has changed as this Court, we would love to make the Apprendi argument that we were going to make before this Court has decided Coston, but that issue has been subsequently decided by this Court. And thus, if there are no further questions, Your Honors, Appellant respectfully asks this Court to reverse and reopen Elijah's 2255 proceedings. Thank you, Your Honors. Thank you, Counsel. Counsel Lee? Chief Judge Gregory, may it please the Court, I'm Andrew DeHaul, and I represent Warden Richard Dunbar. We agree that Mr. Elijah's pro se objections to the R&R were sufficient to trigger de novo review, and we agree that the District Court erred by not performing that task. We disagree, though, on the issue specifically that the remedy for that error is for this Court to perform that task in the first instance and also to reopen a separate appeal. We want to make something clear. We don't agree with the reply brief that this First Step Act claim presents a pure question of law. I've noticed today here at argument and then I keep hearing about the entitlement to these credits. I think the better term on this First Step Act question is eligibility for additional credits. First Step Act amendments to 3624B make someone eligible for an additional seven days per year, but they're not necessarily guaranteed it. That's important here on this question of remand, because if the District Court were to hold that Mr. Elijah is eligible, there would then need to be a calculation by BOP and an assessment of his conduct during his first prison term as to how much of those 63 days he would get. Now that's more of a factual intensive inquiry, and so for that reason we think it is important that the District Court go and perform that analysis and consider this question in the first instance. As to whether this would become moot potentially, as I understand it, Mr. Elijah's current projected release date with the amount of good credit times he can get is November 15, 2025, I believe. I want to just make that clear because the record, or the JA talks about him having that release date in September 2025, but it's actually been pushed back. So he's got two and a half years to have a court, and potentially this court, look at it. Now as for the remand having an impact on his request to reopen his 2255, I think that just speaks to why this argument shouldn't have been made in this appeal in the first place. If he really wants the mandate to be made within that appeal and not in this one. And because it could be done there, remanding would not prejudice him or delay his ability to try and pursue those arguments within that case. I think the most likely reason for remand is that his objections were not appropriately considered. And so can we not dodge all this good time credit by just sending it back for the court to consider the objections appropriately? That's correct, Judge Floyd, and that's what we're advocating here is that this be remanded to the district court so that it performs the analysis that it was supposed to, and so that Mr. Elijah gets the Article III adjudication of which he complained in his opening brief. Now, assuming your honors disagree with me about that, I'm happy to address the merits of the first setback claim. I think it's important to know precisely what the first setback did to 3624B. I want to ask you about the Pinnable decision. It's the case that used the unitary sentencing framework to interpret the sentence under the first setback. How is that distinguishable from this case? As your honor pointed out when appellants counsel was arguing, that's not a good time credits case. That is about the sentencing power of a district court. And we submit that there's a distinction between using unitary sentencing theory in court proceedings versus using it in a statute designed for BOP to administer. So we think that is a key distinction and why Pinnable would not control the result that Mr. Elijah wants here. And on that point, I think if I understood my friend on the other side, she said that the first setback's purpose was making the Fair Sentencing Act retroactive. Now that was true as for part of the first setback. I think it's important here to see exactly what the first setback in Section 102 was doing. And as counsel correctly identified, the whole point of that part of the first setback was simply to change the formula that resulted from the Barber v. Thomas decision by the Supreme Court in 2010 such that prisoners could get the full 54 days instead of 47. Now what Congress didn't do was change the nature of these credits. They didn't make these credits, which hadn't been bankable since the Prison Litigation Reform Act in 1997, somehow bankable for people who go out and commit a supervised release violation. And so when I read these decisions that we have cited in our brief, I don't see them or the argument I'm making here against banking about my policy or these courts' policy, but really about interpreting Congress' policy. Did Congress intend to change this? Does that go to whether or not this situation is a covered offense? In other words, is a revocation a covered offense under the Act? I read Venable that way, yes, Your Honor. I think Venable says that. Your Honors, if there are any other questions about the First Step Act claim, I'm happy to answer them. But if not, I'll go ahead and proceed to his request to reopen the 2255 proceedings. Again, we start out by saying that we disagree that this is the appropriate case in which to try and reopen that decision, which was handed down in 2021. If he's going to do it at all, he needs to make a motion within that case. Second, we disagree that the last resort style nature of recalling the mandate is appropriate in this case. We think that he has thoroughly litigated his claim in the District Court and before Your Honors. He even pitched a petition for panel and en banc rehearing. So we think that that's not something that needs to be further litigated and that he hasn't met the standard for the extraordinary relief he requires. Your Honors, if there are no further questions, we ask that this matter be remanded to the District Court. So you believe that the sentence he received was correct? The three-year revocation? The violation? We do, Your Honor. Although it really should have been C? We don't believe that it should have been C, Your Honor. We think that he was sentenced in 2007. It was a Class B felony at that time. He was sentenced before the Fair Sentencing Act took place. And the Fair Sentencing Act doesn't apply to people who were sentenced before August 3rd, I think, 2010. So if you're wrong about that, the sentence was wrong? Yes. Thank you, Your Honor. Thank you, Counsel. Counsel? Thank you, Your Honors. I'd like to make three points. With respect to whether or not this court should remand the case, we think this case is distinguishable from Cruz. In Cruz, there was new factual determinations that arose between the magistrate's report and recommendation and the District Court's opinion. And so in that case, it was appropriate for this court to remand for the District Court to make a decision. Here, all that's presented is a legal question. And this court routinely decides questions of law in the first instance. And we think that in the interest of both efficiency and justice,  as the government pointed out in their 11-case string site, have decided against him. And we think because they are misapplying this court's unitary sentencing theory as it was set out in Venable. By deciding this question here now, this court will provide instruction to the District Courts how to decide this issue going forward and clarify this court's unitary sentencing rather than waiting for Mr. Elijah to go through the remand process, lose, bring another appeal, and so forth, at which time he could very well already be released from prison, depending on how long that process takes. And with respect to whether or not Elijah is entitled to the good conduct time, it's already been established that he's entitled to those credits by virtue of the First Step Act being retroactive. The question now is whether he is statutorily entitled to apply them to his sentence. And we would argue that he is, because under this court's theory of unitary sentencing, the revocation sentence that he is currently serving in his 144-month term of imprisonment is a part and tied to that original sentence. And so he is able then under the statute to apply those good conduct time credits that he earned to his revocation sentence. And with respect to whether or not we're asking this court to apply the Fair Sentencing Act retroactively, we are not. Congress did not need to make the good conduct time of the First Step Act retroactive, but it did. And we are simply asking this court to apply it in that way. And I think on that point, we think that Elijah should get those good conduct time credits. And with respect to our second argument that this court reopened his 2255 petition, we do acknowledge that this is an extraordinary request and it's an extraordinary form of relief. But with respect to whether or not we're asking for a retroactive application, we're not. The Fair Sentencing Act does not apply retroactively. We concede that. But it does apply prospectively at the time of sentencing. And when Mr. Elijah was sentenced to his revocation sentence in 2015, he was subject to the Fair Sentencing Act. And the law in 3583E3 at the time is someone who is convicted of a Class C felony is subject to only two years of revocation sentence versus a Class B subject to three years. And this court in United States v. Hope followed the Supreme Court in Dorsey v. United States by applying the law as it is at the time of sentencing. So we're not asking for a retroactive application of the Fair Sentencing Act. We're simply saying that the district court did not apply the law that was in effect at the time to Mr. Elijah's revocation sentence. And it should have because the statute says is a Class C felony is a Class B felony. And if there are no further questions, Your Honor, we would ask that this court reverse and reopen Mr. Elijah's 2255 petition for further proceedings. Thank you. Thank you, Counsel. We note, Professor, that your court opponent on behalf of the Fourth Circuit, we thank you and Learned Student Council for being here. We need lawyers like yourselves to take these cases and help us on these thorny issues. Thank you so much. Of course, Mr. Hall, we thank you for your able representation as well. With that, we're going to take a very brief recess and come down and greet Counsel. And the clerk will give instructions to the audience. Thank you.
judges: Roger L. Gregory, James Andrew Wynn, Henry F. Floyd